UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mercy Hospital of Folsom, *Plaintiff*, v. Health Care Service Corporation, et al. *Defendants*. | No. 24 CV 2749<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Mercy Hospital of Folsom ("Mercy") sued Health Care Service Corporation ("HCSC") in Illinois state court alleging HCSC failed to adequately compensate it for services it rendered to eight patients with HCSC-sponsored health plans.[1] HCSC timely removed the case to this Court arguing federal question and supplemental jurisdiction exist because one of the patients has a health plan that is governed by the Employee Retirement Income Security Act ("ERISA"). Mercy now seeks remand. For the following reasons, the motion is denied with respect to the claim involving the ERISA plan. The Court declines, however, to exercise supplemental jurisdiction over the claims related to the remaining seven disputes.

**I.  Background**

Mercy is a California-based public benefit corporation that provides medical care to patients. [Dkt. 1-1 ¶ 3.] Mercy has a contract with Blue Cross of California whereby Mercy agrees to provide medical treatment to individuals with health plans

---

[1]   Mercy also sued a series of "Doe" Defendants whose identities are currently unknown. [Dkt. 1-1.]

1

"financed, sponsored, and/or administered" by HCSC at set rates. [*Id.* ¶ 27.] HCSC is not a signatory to this contract, but Mercy contends the parties have an implied-in-fact contractual relationship where Mercy agrees to treat HCSC's insureds, and HCSC agrees to reimburse Mercy at the contract price. [*Id.* ¶¶ 28-31.]

Between May 9, 2018, and April 12, 2021, Mercy provided various treatments to eight patients with HCSC health plans. [*Id.* ¶¶ 11-12.] The aggregate market rate for these treatments was $1,095,551.61, but pursuant to the contract rates, Mercy billed HCSC $648,130.72. [*Id.* ¶ 34.] To date, HCSC has only paid Mercy $274,160, leaving a balance of $373,970.72. [*Id.*] Despite demands from Mercy, HCSC has refused to make additional payments.

This litigation followed. Mercy sued HCSC in Cook County alleging HCSC breached the parties' implied-in-fact contract by refusing to pay the contract rates for the services, or, alternatively, owes Mercy under a *quantum meruit* theory. HCSC timely removed the case to federal court. HCSC contends that because one of the eight patients, "Patient No. 5" (the "Patient"), has a healthcare plan governed by ERISA, federal law completely preempts the claim.[2] [Dkt. 1 at 3.][3]

The Patient's plan articulates when HCSC must pay for services: "All services and supplies for which benefits are available under the Plan must be Medically

---

[2] HCSC relies on declarations from Jo McMillin to substantiate its claim that the Patient's plan is governed by ERISA and for various other issues. [Dkt. 1 at 4-5; Dkt. 1-3; Dkt. 35-1.] Because this motion involves whether the Court has subject-matter jurisdiction, it may consider such evidence. *See John Muir Health v. Health Care Serv. Corp.*, 2023 WL 4707430, at *3 n.1 (N.D. Ill. July 24, 2023).

[3] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

Necessary as determined by [HCSC]. Charges for services and supplies which [HCSC] determines are not Medically Necessary will not be eligible for benefit consideration." [Dkt. 26 at 9.] The plan includes a lengthy definition for what constitutes "Medically Necessary", but at a high level, the treatment must be "essential" to a patient's condition, provided in a generally accepted and economical manner, and not for the benefit of the provider. [*See* Dkt. 1-4 at 82-83.]

The parties agree HCSC has refused to pay for any treatment Mercy provided the Patient on the basis it was not Medically Necessary. [Dkt. 1-1 at 27; Dkt. 26 at 7, 9.] Prior to treating the Patient, Mercy contacted HCSC, informed it of the Patient's hospitalization and sent a pre-authorization request. [Dkt. 33 at 4-5; Dkt. 35 at 3.] In response, HCSC provided a "pended authorization number", which informs the provider that HCSC will require additional information before deeming the treatment Medically Necessary. [Dkt. 35 at 3.] Mercy treated the Patient before receiving confirmation from HCSC that it would pay for the treatments.[4] [*Id.* at 4.]

Based on these facts, HCSC argues Mercy's claim derives from the benefits prescribed in the Patient's ERISA plan, and so ERISA preempts the claim. Essentially, the Court (and ultimately a jury) will need to analyze the plan language—and particularly the plan's definition of Medically Necessary—as compared to the Patient's treatment to determine HCSC's payment obligations. [Dkt. 1 at 9-10.] And because the Court has jurisdiction over the Patient, it has

---

[4] The parties dispute whether HCSC pre-authorized treatment, but based on the Court's review of the parties' submissions, it appears conclusive there is no evidence of pre-authorization. [Dkt. 35-1.]

3

supplemental jurisdiction over the claims related to the remaining seven patients under 28 U.S.C. § 1367(a). [*Id.* at 13-15.] Mercy now moves to remand.

## II. Analysis

A defendant may remove an action filed in state court when the action could have been brought in federal court. 28 U.S.C. § 1441(a). A federal court has jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "As the party seeking removal, [HCSC] bears the burden of establishing federal jurisdiction." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017).

To determine whether a complaint arises under federal law, courts employ the "well-pleaded complaint rule." *Citadel Sec., LLC v. Chi. Bd. Options Exch., Inc.*, 808 F.3d 694, 701 (7th Cir. 2015). This rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* That is, "the plaintiff's statement of his own cause of action" must show "that it is based upon federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).

But "a plaintiff may not defeat removal by omitting to plead necessary federal questions", which occurs when a plaintiff does not plead a federal cause of action, even though "federal law completely preempts a plaintiff's state-law claim." *Citadel Sec.*, 808 F.3d 694 at 701. "Complete preemption, really a jurisdictional rather than a preemption doctrine, confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint*

4

*Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008). "The ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* (internal quotations omitted). This is so "even if the plaintiff does not want relief under ERISA." *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1490 (7th Cir. 1996).

The Supreme Court in *Davila* articulated a two-prong test for deciding whether ERISA completely preempts a state-law claim. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Complete preemption exists in an ERISA claim, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions." *Id.* The Court reviews each in turn.

### A. Whether Mercy could have brought its claim under ERISA

The first prong of the *Davila* test looks to whether the plaintiff "could" have brought the claim pursuant to Section 502(a)(1)(B) of ERISA. *Davila*, 542 U.S. 200, at 210. The provision provides as follows: "A civil action may be brought … (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

A medical provider that receives a valid assignment from a participant has standing under ERISA to pursue benefits purportedly owed under the plan. *Griffin v. Teamcare*, 909 F.3d 842, 847 (7th Cir. 2018) ("[a]n assignee designated to receive benefits is considered a beneficiary and can sue for unpaid benefits under section

5

1132(a)(1)(B)"); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 615 (7th Cir. 2002) ("a properly assigned ERISA claim makes the assignee a participant or beneficiary within the meaning of the Act"); *John Muir v. Health Care Servs. Corp.*, 2023 WL 4707430, at *3 (N.D. Ill. July 24, 2023) ("when a participant assigns her rights under the plan to a medical provider, that provider qualifies as a 'beneficiary'"); *Emerus Hospital Partners, LLC v. Health Care Servs. Corp.*, 41 F.Supp.3d 695, 699 (N.D. Ill. 2014) ("healthcare providers may acquire derivative standing by obtaining a written assignment from a 'beneficiary' or 'participant' of his right to payment of benefits under an ERISA-governed plan") (cleaned up); *see also McDonald v. Household Intern, Inc.*, 425 F.3d 424, 429 (7th Cir. 2005) (a complaint that "focuses on the defendants' failure to give … the benefits under the medical plan" are "precisely the kind of claim" contemplated by ERISA § 502(a)).

The requirements for making an assignment are determined by the plan language. *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) ("Because ERISA instructs courts to enforce strictly the terms of plans … an assignee cannot collect unless he establishes that the assignment comports with the plan"); *Morlan*, 298 F.3d 609, at 615 ("ERISA plan itself" determines assignability, which is "a matter of freedom of contract in the absence of a statutory bar"); *Rush Univ. Med. Ctr. v. Mut. Med. Plans, Inc.*, 2021 WL 5882139 (N.D. Ill. Dec. 13, 2021).

HCSC contends there was a proper assignment because in Mercy's initial claim submission (before it knew HCSC would deny coverage), the form indicated the Patient had assigned their rights to Mercy. [Dkt. 1-3 ¶¶ 17-18; Dkt. 1-5 at 3 (showing

6

form marked "Y", as in "Yes", for "Assignment of Benefits"); Dkt. 26 at 12-13.] A court in this district recently held this exact indication was sufficient to establish an assignment of rights. *John Muir*, 2023 WL 4707430, at *4.

Mercy counters by arguing that the Patient's plan language in this case requires more for an assignment to be valid. [Dkt. 16 at 14-15.] More specifically, Mercy argues an assignment under the plan can only occur when the medical provider sends the insurer the written assignment of benefits the medical provider received from the insured. [*Id.*] The plan's "Who Receives Payment" provision states:

> Except as provided in the section **Assignment and Payment of Benefits**, rights and benefits under the Plan are not assignable, either before or after services and supplies are provided.

[Dkt. 16 at 14; Dkt. 16-5 at 5] (emphasis in original). In turn, the Assignment and Payment of Benefits section states:

> If a written assignment of benefits is made by a Participant to a Provider and the written assignment is delivered to the Carrier [HCSC] with the claim for benefits, the Carrier will make any payment directly to the Provider. Payment to the Provider discharges the Carrier's responsibility to Participant for any benefits available under the Plan.

[*Id.*] According to Mercy, no valid assignment occurred here because "Mercy did not deliver to HCSC any written assignment made by a Participant", which is required by the provision's "plain language." [Dkt. 16 at 15.] Mercy then cites to a host of opinions where courts have strictly enforced other "unambiguous anti-assignment provisions." [*Id.* at 15-16.]

While impliedly conceding Mercy did not send it a written assignment, HCSC interprets the provision differently. [Dkt. 26 at 13-14.] As two federal courts in Texas have held, HCSC reads the language to mean "delivery of the written assignment is

7

a condition for automatic direct payment in the standard claim handling process, but not for the assignment of benefits itself." *Shih v. Blue Cross & Blue Shield of Texas Inc.*, 2022 WL 444476, at *3 (S.D. Tex. Feb. 10, 2022); *Bailey v. Blue Cross & Blue Shield of Texas Inc.*, 2022 WL 669855, at *2-3 (S.D. Tex. Mar. 7, 2022) (interpreting identical provision "permit[s] an assignment of benefits if they are: (1) in writing; and (2) made to a provider").

Although the provision is inelegantly drafted, the Court concludes HCSC has the better argument. When interpreting an ERISA plan, "the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement. All language of a plan should be given effect without rendering any term superfluous." *Schultz v. Aviall, Inc.*, 670 F.3d 834, 838 (7th Cir. 2012).

Starting with the "Who Receives Payment" provision quoted above, the Court determines there must be *some* independent ability to assign benefits under the plan. Otherwise, the provision would simply read "rights and benefits under the Plan are not assignable, either before or after services and supplies are provided." And nothing in this (hypothetical) provision would disturb the "Assignment and Payments of Benefits" section, which would make a written assignment a mere condition of direct payment.

This is essentially how *Cooperman* read these same provisions. *Cooperman v. Horizon Blue Cross Blue Shield*, 2020 WL 5422801, at *2 n.2 (D.N.J. Sept. 10, 2020) ("for purposes of payment, the Plan will pay a[] … provider directly … if an assignment is included with the underlying claim, but the Plan otherwise prohibits

8

members from making wholesale transfers of their rights and benefits under the Plan to others.") That is, there is no assignment, only authorization of direct payment. The Court respectfully disagrees with *Cooperman* for this very reason. As noted in *Shih*, this would render superfluous both the language of the "Who Receives Payment" provision, as well as the title of the "Assignment *and* Payment of Benefits" section. *Shih*, 2022 WL 444476, at *3 ("[c]onstruing the section 'Assignment and Payment of Benefits' as only allowing direction of payment renders superfluous both the title of the section and the part of the carve-out provision stating that the rights can, under certain conditions, be assigned.")

Having decided the plan requires some independent assignment, the Court interprets the "Assignment and Payment of Benefits" provision the same as the courts in *Shih* and *Bailey*: the provision permits assignment when a participant makes a written assignment of benefits to a provider (and only a provider). In addition, it allows a carrier to pay a provider directly when the assignment accompanies a claim for benefits. Mercy argues this interpretation "completely ignore[s] the plain meaning of the unambiguous language", [Dkt. 27 at 6], but, taking the plan language as a whole, the Court determines this is the best reading.

The Court therefore concludes Mercy received a proper assignment of benefits from the Patient. Mercy's claim submission to HCSC for the Patient so indicated.[5] [Dkt. 1-5 at 3.] Accordingly, Mercy had standing to sue under Section 502(a)(1)(B) of ERISA, and could have done so. It does not matter, as Mercy argues, that Mercy did

---

[5] The Court notes Mercy's claim submission was also plainly intended to be sufficient for HCSC to remit payment to Mercy directly.

not file suit as a plan beneficiary, intend to implicate ERISA or "bring this action pursuant to an assignment of benefits." [Dkt. 27 at 2.] What matters is that Mercy *could* have because it received an assignment from the Patient. *Davila*, 542 U.S. 200, at 210; *Jass*, 88 F.3d 1482, at 1490 (ERISA preemption occurs "even if the plaintiff does not want relief under ERISA.") The first prong of the *Davila* test is satisfied.

      **B.    Whether an independent legal duty exists**

The second prong of the *Davila* test asks the Court to analyze whether an independent legal duty is implicated by HCSC's actions. *Id*. The Court determines no such duty exists.

Mercy contends it has an implied-in-fact contract with HCSC because of its express contract with Blue Cross of California. The contract with Blue Cross obligates Mercy to provide treatment at set rates to patients with health plans "financed, sponsored, and/or administered" by HCSC. [Dkt. 1-1 ¶ 27.] That is, a HCSC related health plan is the prerequisite for the implied-in-fact contract to exist. Mercy does not contend HCSC would have an obligation to pay it if the patient did not have such a plan. Here, the Patient's plan states HCSC only needs to pay for treatments that are Medically Necessary.

It is undisputed HCSC has defended its refusal to pay for any portion of the Patient's treatment on the basis they were not Medically Necessary. [Dkt. 1-1 at 27; Dkt. 26 at 7, 9.] The absence of *any* payment by the insurer to the provider makes this a "right to payment" case, as opposed to a "rate of payment" case.

This is a critical distinction. Courts routinely hold the former cases only implicate ERISA duties because the assignee's rights under the plans still must be

10

determined; the plan language matters. When there is a rate of payment dispute, however, the plan coverage is established, and instead the independent legal duty to adequately compensate for services arises. *Compare John Muir*, 2023 WL 4707430, at *1 (finding no independent legal duty exists in plaintiff's implied-in-fact and *quantum meruit* claims where "HCSC never paid John Muir Health for the services"); *Emerus Hosp. Partners*, 41 F. Supp. 3d 695, at 700 (denying remand because "the *right* to payment … does not involve duties completely independent of an ERISA plan") (emphasis in original); *with Affiliated Dialysis of Joliet, LLC v. Health Care Servs. Corp.,* 2024 WL 1195607 (N.D. Ill. Mar. 20, 2024) (no ERISA preemption where dispute was over reimbursement amount); *Stanford Health Care v. Health Care Servs. Corp.*, 2023 WL 7182990 (N.D. Ill. Nov. 1, 2023) (same); *see also Emerus Hosp. Partners*, 41 F.Supp. 3d 695, at 700 ("a claim that merely implicates the rate of payment does not run afoul of *Davila* and is not preempted by ERISA.")

In this case, the only way to determine whether HCSC is required to pay Mercy for the treatment it provided the Patient is to analyze whether the treatments were Medically Necessary as that term is defined in the ERISA plan. Put differently, "whether [Mercy] is entitled to damages depends on what benefits and payments are owed under the relevant ERISA plans." *John Muir*, 2023 WL 4707430, at *4. Consequently, "there is no other independent legal duty that is implicated by" HCSC's actions beyond ERISA. *Davila*, 542 U.S. 200, at 210.

The other cases Mercy relies on are distinguishable. In *Franciscan Skemp*, the Seventh Circuit held the medical provider alleged an independent legal duty because

11

the insurer agreed that it would pay for the services prior to treatment. *Franciscan Skemp*, 538 F.3d 594, at 596 ("[b]efore providing services, Franciscan Skemp called Central States to verify Central States's coverage of Romine and the relevant services. A Central States representative made oral representations that they were covered.") As it turned out, the insured was not covered because she had failed to pay her premiums, and the insurer withheld payment on that basis. *Id.* The medical provider then brought claims for negligent misrepresentation and estoppel against the insurer. *Id.* The Seventh Circuit held these claims were not preempted by ERISA because they derived from an independent legal duty: the insurer's representation that it would pay for the services. *Id.* at 598 ("Franciscan Skemp is seeking damages arising from alleged misrepresentations made by Central States to Franciscan Skemp in response to its inquiry—a wrong not within § 502's scope.")

The pre-treatment authorization of services also distinguishes this case from the recent *Regents of California* decision. *Regents of the Univ. of Cal. v. Health Care Serv. Corp.*, 2024 WL 2209595 (N.D. Ill. May 14, 2024). In that case, "[p]rior to rendering services, UCLA Health sought and received authorization from HCSC to admit the patients and provide medical treatment." *Id.* at *1. Here, HCSC did not represent to Mercy that it would pay for the Patient's treatments. In fact, HCSC informed Mercy that it would require additional information from Mercy, something Mercy did not submit before treating the Patient. [Dkt. 35-1.]

To establish an independent legal duty, Mercy focuses on the language in *Regents* that the plaintiff's implied-in-fact and *quantum meruit* claims "arise from the

12

parties' conduct", which are "independent from any duties that arise under the" ERISA plans. *Regents*, 2024 WL 2209595, at *5; [Dkt. 27 at 8.] The Court respectfully concludes this is incorrect. Earlier in the opinion, *Regents* cited to *Emergency Grp. of Ariz. Prof. Corp. v. United Healthcare, Inc.*, 838 F. App'x 299, 300 (9th Cir. 2021), to support the proposition that claims for implied-in-fact contracts "based on a course of dealing between the parties" do not implicate ERISA preemption because the "alleged legal duties would exist whether or not an ERISA plan existed." *Id.* at *4 (quotations omitted). But *Emergency Group* involved a rate of payment issue, which again proves crucial. *Emergency Grp.*, 838 F. App'x 299, at 300.

Because the parties agreed treatment was covered under the plan in *Emergency Group*, the content of the ERISA plan did not need to be scrutinized. The only question there was how much the medical provider needed to be reimbursed for the treatment. In such a scenario, the course of dealings between the parties mattered because it would determine how much the insurer needed to pay. That is, because the parties agreed the treatment was covered by the plan, the duty to pay the appropriate amount "would exist whether or not an ERISA plan existed" and is distinct from any ERISA obligation. *Id.* This is wholly consistent with the "rate" vs. "right" dichotomy discussed above. In the present case (and the Court suggests in *Regents*[6]), the course of dealings between the parties does not create an independent legal duty because coverage under the ERISA plan is contested. The course of dealings between Mercy

---

[6] The Court in *Regents* noted, as here, "HCSC has not paid anything" under the ERISA plan. *Regents*, 2024 WL 2209595, at *1. To be clear, the Court agrees *Regents* reached the right result, but that the independent legal duty was created not by the parties' course of dealings, but by the pre-treatment authorization.

13

and HCSC is for HCSC to determine whether reimbursement is appropriate, and the only way to do that is to evaluate the language of the ERISA plan.

Simply put, the only legal duty raised by Mercy's complaint—even under its implied-in-fact contract theory—is HCSC's duty to pay for Medically Necessary treatments. That duty is outlined in the contents of the ERISA plan. Although Mercy clearly would prefer to litigate in state court under common law theories, ERISA preemption exists "even if the plaintiff does not want relief under ERISA." *Jass*, 88 F.3d 1482, 1490 (7th Cir. 1996). At its core, Mercy's pleading "focuses on the defendants' failure to give … the benefits under the medical plan", which is "precisely" what ERISA § 502(a) covers. *McDonald*, 425 F.3d 424, at 429.

### C. Supplemental Jurisdiction

The above analysis confirms the Court has jurisdiction over Mercy's claims regarding Patient No. 5. But claims based on seven other patients remain. HCSC urges the Court to exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a) "because they all relate to reimbursement for claims that Mercy submitted through the BlueCard program after Mercy purportedly provided medical services to HCSC members or beneficiaries." [Dkt. 1 at 13-15.] Despite ample opportunity to do so, Mercy has not responded to any arguments regarding supplemental jurisdiction.

A court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United State Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction is a "doctrine of discretion, not of …

right," (*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)), but "judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423–424 (7th Cir. 1995) (state and federal claims are related when they "derive from a common nucleus of operative facts.") While "[a] loose factual connection between the claims is generally sufficient," *id*., the facts connecting them must nonetheless be operative in determining the outcome of the federal claim. *Saud v. DePaul Univ.*, 2019 WL 5577239, at \*7 (N.D. Ill. Oct. 29, 2019) (finding that supplemental jurisdiction was not conferred where "[t]he state law claims [had] little, if any, overlap with [the] evidence" required for resolution of the plaintiff's federal claims). It is not enough that the claims be tangentially related. *Hernandez v. Dart*, 635 F. Supp. 2d 798, 814 (N.D. Ill. 2009) (citing *Chaney v. City of Chicago*, 901 F. Supp. 266, 270 (N.D. Ill. 1995)). To be 'operative,' the facts must be "'relevant to the resolution of' the federal claims.'" *U.S. v. Clark*, 2010 WL 476637, \*1 (N.D. Ill. 2010).

   The Court does not see how Mercy's claims related to the seven remaining patients are in any way "relevant to the resolution of" Patient No. 5's ERISA claim. *Clark*, 2010 WL 476637, at \*1. The claims involve different plans, patients, procedures, and bases for denial. [Dkt. 1-1 at 27.] The witnesses will likely be different, as will the documents. Indeed, it appears the only thing these claims have in common is that Mercy provided the services, and HCSC refused to pay for them. But even then, the determination of liability for each case will remain distinct. A jury

15

finding HCSC is liable for Patient No. 5's treatments will have no impact on whether Mercy billed HCSC the proper rate for Patient No. 2, or whether Patient No. 4's treatment was impermissibly experimental. [*Id.*] And while the Court acknowledges that other courts have used their discretion to exercise supplemental jurisdiction in similar situations, it declines to do so here.[7]

### III. Conclusion

For the reasons stated herein, the Court concludes Patient No. 5's claim is preempted by ERISA, and therefore this Court has jurisdiction. Mercy's motion to remand is denied as to this Patient. For the claims related to the remaining seven patients, however, the Court concludes it does not have original jurisdiction, and declines to exercise supplemental jurisdiction. By July 12, 2024, Mercy is ordered to file an amended complaint on the docket that pertains only to Patient No. 5.

Enter: 24 CV 2749
Date: July 2, 2024

_____
Lindsay C. Jenkins
United States District Judge

---

[7] In those cases, the courts stated they had supplemental jurisdiction without any explanation as to how the non-ERISA claims relate to the resolution of the federal claim. *See John Muir*, 2023 WL 4707430, at *4; *Carmel Specialty Surgery Ctr., LLC v. United Healthcare Servs., Inc.*, 2016 WL 3944751, at *2 (S.D. Ind. 2016) ("To the extent that the Surgery Centers assert additional claims in some of the actions that are not preempted by ERISA, the Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367 at this time."). The Court does not critique these cases, but notes only they do not provide any compelling reasons for why this Court should employ supplemental jurisdiction.